UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| BRETT O. COLHOFF, | ) | CIV. 13-5002-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| vs. | ) | |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

Plaintiff Brett O. Colhoff filed a complaint appealing from an administrative law judge's ("ALJ") decision denying disability benefits. (Docket 1). Defendant denies plaintiff is entitled to benefits. (Docket 12). The court issued a briefing schedule requiring the parties to file a joint statement of material facts ("JSMF"). (Docket 11). The parties filed their JSMF. (Docket 15). For the reasons stated below, plaintiff's motion to reverse the decision of the Commissioner (Docket 20) is granted.

## FACTUAL AND PROCEDURAL HISTORY

The parties' JSMF (Docket 15) is incorporated by reference. Further recitation of salient facts is included in the discussion section of this order.

On August 12, 2009, plaintiff Brett O. Colhoff applied for disability insurance benefits and supplemental social security income asserting a

disability date of May 27, 2008.  (Docket 15 at ¶ 1).  The claims were denied initially on January 13, 2010, and on reconsideration on April 7, 2010.  Id. at ¶ 2.  Mr. Colhoff filed a request for a hearing on May 4, 2010, and a hearing was held on March 8, 2011.  Id. at ¶¶ 3-4.  Id.  On April 11, 2011, the ALJ issued a decision finding Mr. Colhoff was not disabled and denying benefits.  Id. at ¶ 5; see also Administrative Record, pp. 25-36.[1]  Mr. Colhoff subsequently sought review from the Appeals Council on May 12, 2011.  (Docket 15 at ¶ 6).  The Appeals Council denied Mr. Colhoff's review request.  Id. at ¶ 7.  Mr. Colhoff then filed a complaint requesting judicial review.  (Docket 1).  The ALJ's decision constitutes the final decision of the Commissioner of the Social Security Administration.  It is from this decision which Mr. Colhoff timely appeals.

    The issue before the court is whether the ALJ's decision of April 11, 2011, (the "2011 ALJ decision") that Mr. Colhoff was not "under a disability, as defined in the Social Security Act, from May 27, 2008, through [April 11, 2011]" is supported by the substantial evidence in the record as a whole.  (AR at p. 36); see also Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001) ("By statute, the findings of the Commissioner of Social Security as to any fact, if

---

[1] The court will cite to information in the administrative record as "AR at p. ___."

2

supported by substantial evidence, shall be conclusive.") (internal quotation marks and brackets omitted) (citing 42 U.S.C. § 405(g)).

## STANDARD OF REVIEW

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006); Howard, 255 F.3d at 580. The court reviews the Commissioner's decision to determine if an error of law was committed. Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Cox v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

The review of a decision to deny disability benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and is based on

substantial evidence. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005). A reviewing court may not reverse the Commissioner's decision " 'merely because substantial evidence would have supported an opposite decision.' " Reed, 399 F.3d at 920 (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)).

## DISCUSSION

"Disability" is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [or combination of impairments] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Administration established a five-step sequential evaluation process for determining whether an individual is disabled. 20 CFR § 404.1520(a)(4). If the ALJ determines a claimant is not disabled at any step of the process, the evaluation does not proceed to the next step as the claimant is not disabled. Id. The five-step sequential evaluation process is:

> (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment–one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform . . . past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Baker v. Apfel, 159 F.3d 1140, 1143-44 (8th Cir. 1998). The ALJ applied the five-step sequential evaluation required by the Social Security Administration regulations. (AR at pp. 27-36). At step five of the evaluation, the ALJ found there were jobs that existed in significant numbers in the national economy that Mr. Colhoff could perform, and he was, therefore, not disabled. Id. at pp. 35-36.

**A.   PLAINTIFF'S ISSUES ON APPEAL**

Mr. Colhoff identifies the following issues: (1) the non-examining psychologist's opinions were not based on evidence the regulation required him to consider; (2) the ALJ failed to identify "severe" impairments; (3) the ALJ failed to properly determine whether Mr. Colhoff's combined pain, depression, anxiety, and medication regimen equaled a listing-level impairment; (4) the ALJ failed to properly develop the record; (5) the ALJ failed to properly assess Mr. Colhoff's credibility; (6) the ALJ improperly assessed Mr. Colhoff's residual functional capacity; and (7) the ALJ's step five decision does not comply with legal standards and was unsupported by substantial evidence.

**1.   Whether Dr. Pelc's opinions constitute substantial evidence.**

Mr. Colhoff argues the ALJ erred in assigning substantial weight to Dr. Pelc's opinion. (Docket 21 at pp. 21-24). Mr. Colhoff asserts the ALJ did not use the procedures required for evaluating mental disorders set out in 20 CFR

§ 404.1520a.  Id.  Mr. Colhoff also contends the ALJ failed to follow the Hearing, Litigation, and Review Manual ("HALLEX") which instructs the ALJ to provide the medical expert with relevant evidence and to ensure the medical expert examined medical and other evidence.[2]  Id.

20 CFR § 404.1520a states in part:

(c) Rating the degree of functional limitation.

> (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation.  We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis.  Thus, we will consider such factors as the quality and level of your overall

---

[2] The HALLEX is an internal manual that provides policy and guidance.  See HALLEX section I-1-001.  Mr. Colhoff acknowledges HALLEX does not have legal force, but urges this court to consider the requirements established by HALLEX because they "represent Commissioner's interpretation of law." (Docket 21 at p. 23).  The Fifth Circuit Court of Appeals noted, "While HALLEX does not carry the authority of law, this court has held that 'where the rights of individuals are affected, and agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required.' "  Newton v. Apfel, 209 F.3d 448, 459 (5th Cir. 2000) (quoting Hall v. Schweiker, 660 F.2d 116, 119 (5th Cir. 1981)).  The Fifth Circuit noted, "if prejudice results from a violation, the result cannot stand."  Newton, 209 F.3d at 459.

> functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listing of Impairments.

20 CFR § 404.1520a(c).

The citation in 20 CFR § 404.1520a to "12.00C through 12.00H" refers to the criteria the ALJ must consider. Paragraph "C" references the "B" criteria - "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 CFR Part 404, Subpart P, App'x 1, Listing 12.00C. Paragraph "D" discusses documentation and source evidence used to establish a medically determinable impairment, assess the degree of functional limitation, and the duration of the impairment. Id. at 12.00D. Paragraph "E" discusses factors the ALJ must consider when assessing chronic mental impairments, including where a claimant may have structured his life in a way to minimize stress and reduce symptoms and signs. Id. at 12.00E. Paragraph "F" discusses the effects of a structured setting, including a claimant's home, which may control or attenuate a claimant's symptomatology, while the claimant's ability to function outside of the controlled setting may be

7

different.  Id. at 12.00F.  Paragraph "G" discusses the effects of medication on a claimant's symptoms, signs, and ability to function.  Id. at 12.00G.  Paragraph "H" discusses the effects of treatment which "may or may not assist in the achievement of a level of adaptation adequate to perform sustained SGA."  Id. at 12.00H.

Mr. Colhoff contends that "[i]n order for a non-examining medical expert to consider Sections 12.00C through 12.00H, and comply with 20 CFR § 404.1520a, the expert must of necessity consider disability and function reports (known as the "E" exhibits) and testimony of the claimant and witnesses.  (Docket 21 at p. 23).  Mr. Colhoff argues Dr. Pelc did not consider disability and function reports, but based his opinion on medical records alone, and, therefore, his opinions cannot provide substantial evidence because they do not satisfy the standards required by 20 CFR § 404.1520a.  Id.  Mr. Colhoff contends Dr. Pelc's reliance on Behavior Management Systems evidence is questionable because Dr. Pelc incorrectly believed Behavior Management Systems was a "chemical dependency program."  Id. at p. 24.

The defendant asserts Mr. Colhoff's argument is without merit because the HALLEX are not regulations and have no legal force.  (Docket 26 at p. 10) (citing Schweiker v. Hansen, 450 U.S. 785, 789 (1981) (claims manual of the Social Security Administration is not a regulation and does not bind the Social Security Administration).  As a result, defendant contends "any omission of

evidence involving Plaintiff's testimony and statements in reports did not prohibit the ALJ from relying on Dr. Pelc's testimony." (Docket 26 at p. 10). Defendant also argues plaintiff has not shown any prejudice resulted from failing to consider this evidence. Id.

After reviewing the ALJ's decision and the record in this case, the court finds the ALJ erred in relying on Dr. Pelc's testimony. Dr. Pelc failed to consider evidence available to the ALJ, including disability and function reports, statements by Mr. Colhoff related to his alleged disabilities, and third party statements relevant to Mr. Colhoff's living conditions, limitations, and daily activities. Without applying the provisions of HALLEX, 20 CFR § 404.1520a requires the medical expert to consider this evidence. It is clear that failing to do so prejudices Mr. Colhoff because Dr. Pelc's opinions are not based on the evidence as a whole nor are they based on evidence the ALJ must consider under the Social Security regulations. The ALJ erred by relying on and giving substantial weight to the opinions of Dr. Pelc, who did not considered the appropriate evidence required by the regulations. Mr. Colhoff's motion to reverse is granted on this basis.

**2. Whether the ALJ failed to identify all of Mr. Colhoff's severe impairments.**

The ALJ identified four severe impairments: "degenerative arthritis of the left knee, adjustment disorder versus major depressive disorder, alcohol dependence, and marijuana abuse." (AR at p. 27). Mr. Colhoff argues the ALJ

failed to identify generalized anxiety disorder, low back degenerative disc disease, obesity, and chronic pain syndrome as severe impairments.  (Docket 21 at pp. 26-29).  The defendant contends the ALJ did not err at step two because he found Mr. Colhoff has "severe" impairments that necessitated he continue through the sequential evaluation.  (Docket 26 at p. 13).

Dr. Everson diagnosed and treated Mr. Colhoff for major anxiety disorder beginning in August of 2009 through December 2010.  See Docket 15 at ¶¶ 150, 151, 154, 162, 199, 201, 208, 218, 228, 231, 236.  Dr. Everson also diagnosed and treated Mr. Colhoff for chronic pain syndrom.  See id. at ¶¶ 144, 166, 167, 187, 195, 200, 201, 208, 218, 223, 225, 231, 236.  Dr. Everson and others noted Mr. Colhoff reported sharp back pain which radiated to both legs lasting at least twelve months.  A 2010 MRI showed diffuse bulging at L4-5 and a mild bulging annulus at L5-S1.  Id. at ¶¶ 120, 204, 207, 223, 226.  Professionals at Behavior Management Systems, including a therapist, social worker, psychiatric nurse, and case manager all diagnosed or treated Mr. Colhoff for major depressive disorder.  See id. at ¶¶ 202, 206, 216, 229.  The ALJ did not discuss these diagnoses nor did the non-examining State Agency physicians consider the impact of these diagnoses in their opinions about whether Mr. Colhoff's impairments met or equaled a medical listing.

The Acting Commissioner essentially argues the ALJ only needs to identify one severe impairment in order to move onto the next step and avoid a

step-two reversal. (Docket 26 at pp. 13-14) (citing 20 CFR § 404.1520(a)(4)(ii)). The Social Security regulations require the ALJ to "consider the medical severity of [a claimant's] impairment(s)." 20 CFR § 404.1520(a)(4)(ii).

"It is the claimant's burden to establish that his impairment or combination of impairments are severe." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007). A severe impairment is defined as one which significantly limits a physical or mental ability to do basic work activities. 20 CFR § 1521. An impairment is not severe, however, if it "amounts to only a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." Kirby, 500 F.3d at 707. "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two." Id. (citation omitted). Additionally, the duration requirement must be met. The impairment must have lasted at least twelve months or be expected to result in death. See 20 CFR § 404.1509.

The record in this case indicates Dr. Everson treated Mr. Colhoff for general anxiety disorder and chronic pain syndrome for more than twelve months. Professionals at Behavior Management Systems reported Mr. Colhoff struggled with his mood, was very anxious, worried, easily irritated, had low motivation many days, and experienced depressive symptoms despite an adequate antidepressant dose. (Docket 15 at ¶¶ 202, 206, 215, 216). Mr.

Colhoff also reported sharp pain in his back radiating to both legs for longer than twelve months.  The potential severe impairments (chronic pain syndrome, general anxiety disorder, and major depression) are terms which appear frequently throughout Dr. Everson's medical records and the notes from Behavior Management Systems.  "Failure to consider a known impairment in conducting a step-four inquiry is by itself, grounds for reversal." <u>Spicer v. Barnhart</u>, 64 Fed. Appx. 173, 178 (10th Cir. 2003).  The Commissioner should have evaluated whether any of the impairments alleged by Mr. Colhoff qualify as "severe" pursuant to 20 CFR § 1521.

> **3. Whether the ALJ erred in failing to consider whether Mr. Colhoff's pain and mental disorders met the criterion for Listing 12.00**.

Mr. Colhoff argues the ALJ erred in failing to consider whether the effects of the combined impairments of pain, depression, anxiety, and medication equaled a listing. (Docket 21 at pp. 30-31).  The defendant argues Mr. Colhoff failed to sustain his burden in showing the evidence establishes his combined impairments are equal in severity to all of the medical criteria of a specific Listing. (Docket 26 at p. 16).  The defendant contends the ALJ's finding that Mr. Colhoff did not have an impairment that medically equaled a Listing is supported by the opinion of Dr. Whittle, a State Agency physician, and Dr. Soule, a State Agency psychologist, who concluded Mr. Colhoff's impairments did not equal a listed impairment.  <u>Id.</u>

12

Medical equivalence can be found if the medical findings are "at least equal in severity and duration to the criteria of any listed impairment." 20 CFR § 404.1526(a). The claimant bears the burden of proving "he has a medically severe impairment or combination of impairments." Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). An impairment is "medically equivalent" to a Listing where (1) the claimant has a listed impairment but does not have one of the required findings, or the finding is not as severe as required, but the claimant has other findings related to the impairment that are at least of equal medical significance to the required criteria; (2) the claimant's impairment does not appear in the Listings but is "at least of equal medical significance to those of a listed impairment"; or (3) the claimant has a combination of impairments, "no one of which meets a listing," but the impairments in combination "are at least of equal medical significance to those of a listed impairment." 20 CFR 404.1526(b).

The determination of whether a particular medical condition meets or equals a Listing is a medical judgment made at the initial and reconsideration stages of administrative review by the Commissioner's designated physicians and consultative medical specialists. 20 CFR § 404.1526(e). In this case, the ALJ concluded Mr. Colhoff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (AR at p. 28). The ALJ noted the "State Agency physicians and examiners

concluded that the claimant's impairments did not meet or equal a Medical Listing, . . . no consultative examiner . . . concluded that a Medical Listing [was] met or equaled, . . . the psychological medical expert did not conclude that a Medical Listing was met or equaled . . . [and] no treating or examining physician has suggested that the claimant [met] or equal[ed] a Medical Listing." Id.

The parties' joint statement of material facts outlines the diagnoses made by Dr. Everson and by professionals at Behavior Management Systems. Dr. Everson diagnosed and treated Mr. Colhoff for major anxiety disorder. See Docket 15 at ¶¶ 150, 151, 154, 162, 199, 201, 208, 218, 228, 231, 236. Dr. Everson also diagnosed and treated Mr. Colhoff for chronic pain syndrom. See id. at ¶¶ 144, 166, 167, 187, 195, 200, 201, 208, 218, 223, 225, 231, 236. Professionals at Behavior Management Systems, including a therapist, social worker, psychiatric nurse, and case manager all diagnosed or treated Mr. Colhoff for major depressive disorder. See id. at ¶¶ 202, 206, 216, 229.

The ALJ's decision did not discuss these diagnoses. Rather, the ALJ relied on Dr. Whittle's, Dr. Soule's and Dr. Pelc's assessments in determining that Mr. Colhoff's impairments did not meet or equal a medical listing. Dr. Whittle indicated he did consider Mr. Colhoff's weight and pain complaints, but found they were out of proportion to the physical findings, although he did not explain the basis for this opinion. Id. at ¶ 238. Dr. Soule's opinions do not

14

reflect any consideration of Dr. Everson's diagnosis of chronic pain syndrom and whether that diagnosis was considered in combination with Mr. Colhoff's mental impairments.  See id. at ¶¶ 239-41.  Dr. Pelc apparently disregarded Mr. Colhoff's physical limitations because they were not within his speciality.  Id. at ¶ 12.  Although Dr. Pelc noted the evaluation performed by Behavior Management Systems, he apparently dismissed them under the mistaken assumption Behavior Management Systems was a chemical dependency program.  Id. at ¶ 13.

    The ALJ was required to consider the functional limitations of Mr. Colhoff's impairments.  20 CFR 404.1520a(c)(1).  In order to do this, the ALJ is to "consider all relevant and available clinical signs and laboratory findings, the effects of [the claimant's] symptoms, and how [a claimant's] functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment."  Id.  Based on the record in this case, the court finds the ALJ erred in relying on the opinions of Dr. Whittle, Dr. Soule and Dr. Pelc in determining whether Mr. Colhoff's severe impairments met or equaled a Listing.  The opinions by these doctors did not consider Mr. Colhoff's other alleged impairments, including general anxiety disorder, chronic pain syndrom, and major depressive disorder or the fact these conditions were diagnosed by treating physicians.  The opinions of

Whittle, Soule and Pelc are not substantial evidence.  Mr. Colhoff's motion to reverse is granted on this basis.

The ALJ's failure to properly determine whether Mr. Colhoff's impairments met or equaled a Listing influenced his evaluation of Mr. Colhoff's subjective complaints of pain under the standards set forth in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  The ALJ's conclusions regarding Mr. Colhoff's credibility rest on erroneous factual findings and a failure to examine the possibility that other impairments not considered aggravate Mr. Colhoff's mental impairments.  Accordingly, substantial evidence in the record as a whole fails to support the ALJ discounting Mr. Colhoff's subjective complaints.

The ALJ's failure to consider other impairments which were diagnosed by Dr. Everson and professionals at Behavior Managements Systems renders the ALJ's residual functional capacity determination defective.  This also impacts the ALJ's step-five determination.  See O'Leary v. Schweiker, 710 F.2d 1334, 1343 (8th Cir. 1983) (hypothetical questions posed to vocational experts must precisely set out all claimant's impairments).  "Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision."  Pratt v. Sullivan, 956 F.2d 830, 836 (8th Cir. 1992) (citing Ekeland v. Bowen, 899 F.2d 719, 722 (8th Cir. 1990).

**4. Whether the ALJ properly developed the record.**

Mr. Colhoff contends the ALJ erred by failing to seek clarification from Dr. Everson regarding his opinions. (Docket 21 at pp. 24-26). The ALJ found Dr. Everson's statement Mr. Colhoff could not gain employment because of his knee pain was "a conclusory opinion on the ultimate determination of disability." (AR at p. 34). The ALJ concluded Dr. Everson "fail[ed] to quantify the claimant's functioning, and fail[ed] to explain how the claimant's impairments interfere with performance of any job-related functions." Id.

Mr. Colhoff agrees Dr. Everson's report was incomplete but argues the ALJ had a duty to contact Dr. Everson and ask him "to assess functional limitations, and provide proper standards so that he would understand what to address." (Docket 21 at p. 26). In this case, the ALJ noted Dr. Everson's objective clinical findings did not support his conclusion Mr. Colhoff could not gain employment because of knee pain. (AR at p. 34). The ALJ remarked Mr. Colhoff's examinations demonstrated "motor strength and tone: normal, joints, bones, and muscles: no contractures, malalignment, tenderness, or bony abnormalities and normal movement of all extremities." Id. Despite these examination results cited by the ALJ, the record also contains significant documentation by Dr. Everson regarding the impact of Mr. Colhoff's knee pain. See Docket 15 at ¶¶ 143, 144, 150, 150, 151, 154, 164, 165, 166, 167, 186, 187, 189, 192, 195, 207, 208, 234, 235, 236.

The ALJ has a duty to develop the record fully, even if the claimant is represented by counsel.  See Cox v. Apfel, 160 F.3d 1203, 1208 (8th Cir. 1998).  The ALJ dismissed these other findings and notations by Dr. Everson without discussion and instead relied on the opinions of non-examining physicians.  "The opinions of doctors who have not examined the claimant ordinarily do not constitute substantial evidence on the record as a whole."  Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000) (citations omitted).  The ALJ did not provide good reasons for discounting Dr. Everson's opinions.  The record indicates the ALJ summarily dismissed those opinions without considering other evidence which supported Dr. Everson's opinions.

**ORDER**

Based on the foregoing discussion, the court finds the ALJ erred in relying on the opinions of Dr. Pelc, Dr. Whittle and Dr. Soule in determining whether Mr. Colhoff's impairments met or equaled a medical listing.  The ALJ also erred in failing to appropriately develop the record.  As a result, the court finds the matter should be remanded for further proceedings consistent with this order.  Accordingly, it is hereby

ORDERED that plaintiff's motion to reverse the decision of the Commissioner (Docket 20) is granted.

IT IS FURTHER ORDERED that, pursuant to sentence four of 42 U.S.C. § 405(g), the case is remanded to the Commissioner for rehearing consistent with the decision set out above.

Dated March 20, 2014.

                                        BY THE COURT:
                                        /s/ *Jeffrey L. Viken*
                                        JEFFREY L. VIKEN
                                        CHIEF JUDGE